Manfred Muecke (SBN: 222893)
mmuecke@manfredapc.com
**MANFRED, APC**
600 West Broadway, Suite 700
San Diego, CA 92101
Telephone: (619) 550-4005
Facsimile: (619) 550-4006

Todd D. Carpenter (SBN: 234464)
tcarpenter@lcllp.com
**LYNCH CARPENTER LLP**
1234 Camino Del Mar
Del Mar, CA 92014
Telephone: (619) 762-1910
Facsimile: (724) 656-1556

*Additional Attorneys Listed on Signature Page*

Attorneys for Plaintiff Hugo Olguin-Moreno,
and the putative class

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| HUGO OLGUIN-MORENO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED SERVICES AUTOMOBILE ASSOCIATION, USAA CASUALTY INSURANCE GROUP,<br><br>Defendants. | **Case No.:** 5:24-cv-00474<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**(1) Breach of Contract**<br><br>**(2) Unjust Enrichment**<br><br>**(3) Violation of California Business and Professions Code § 17200** *et seq.* |

## CLASS ACTION COMPLAINT

Plaintiff Hugo Olguin-Moreno ("Plaintiff Olguin-Moreno" or "Plaintiff"), by and through his attorneys and on behalf of himself and all others similarly situated, hereby submit this Class Action Complaint against Defendants United Services Auto Association ("USAA") and USAA Casualty Insurance Group ("USAA Casualty") (collectively, "Defendants"), and allege as follows:

## PRELIMINARY STATEMENT

1. This case is filed to remedy Defendants' inequitable profiteering that grossly exceeded a fair rate of return during the global COVID-19 pandemic.

2. Beginning in March 2020, the state of California, implemented and began to enforce strict social distancing measures to slow the spread of COVID-19. This included closing schools and businesses and instituting strict "stay-at-home" orders that prevented most individuals from leaving their homes for extended periods of time.

3. Consequently, as a result of state-wide social distancing and stay-at-home measures, there was a dramatic reduction in driving, and an attendant reduction in driving-related accidents. This decrease in driving and accidents significantly reduced the number of claims that auto insurers like Defendants paid during the early stages of the pandemic, resulting in a drastic and unfair increase in Defendants' profits at the expense of its policyholders.

4. One published report calculates, very conservatively, that at least a 30% average refund of paid premiums would be required to make up for the excess amounts paid by consumers for just the period between mid-March and the end of April of 2020.

5. Despite full knowledge of these facts, Defendants continued to charge and collect excessive premiums throughout 2020 and the first half of 2021 and has failed to issue adequate refunds. Defendants' dividend and premium credit program was inadequate to compensate its customers for overpayments

resulting from the substantial reduction in driving and accidents during the COVID-19 pandemic. The program applied only a 20% dividend to policyholders spanning three months starting in March 2020. And although Defendants report that they offered an additional dividend and smaller premium credits later in 2020 and 2021, these amounts were still insufficient.

6. To remedy Defendants' unlawful conduct, Plaintiff brings this class action alleging a breach of good faith & fair dealing and violations of California state law. Plaintiff seeks disgorgement of the ill-gotten gains obtained by Defendants to the detriment of its customers, all available damages, punitive damages, and all other available relief.

## JURISDICTION

7. This Court has jurisdiction under 28 U.S.C. § 1332(d) because this is a class action in which the amount in controversy is over $5,000,000 exclusive of interest and costs, and at least one member of the class is a citizen of a State different from Defendants.

## VENUE

8. Venue is proper in the Central District of California under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

9. Defendant United Services Auto Association is a Texas corporation with a principal place of business in San Antonio, Texas. Defendant sells personal automobile insurance in states around the country, including California. Defendant issued auto insurance policies during the relevant time period at issue.

10. Defendant USAA Casualty Insurance Company is a Texas corporation with a principal place of business in San Antonio, Texas. Defendant sells personal automobile insurance in states around the country, including California. Defendant issued auto insurance policies during the relevant time

period at issue.

11. Defendants issued personal auto, motorcycle, and/or RV insurance policies to Plaintiff and the members of the putative class during the relevant time period. Defendants are affiliated companies, jointly participated in, and are jointly responsible for the unlawful conduct described herein.

12. In April 2020, Defendants announced they would be returning a portion of premiums in the form of statement credits.[1] These statement credits and return of a portion of premiums in the form of dividends were uniformly developed by Defendants and applied in identical fashion by each of the Defendants. Indeed, Defendants submitted a joint memorandum to the California Department of Insurance explaining the uniform terms and application of the premium credits and dividends.[2] Defendants have each applied the policy premium credit and dividend program and the unfair practices at issue to California policyholders during the relevant time period.[3]

13. Plaintiff Olguin is an adult resident of Wildomar, California. Plaintiff has held personal auto insurance policies purchased from USAA during the time period relevant to this lawsuit. As described in more detail herein, as a result of the global COVID-19 pandemic and corresponding drop in automobile

---

[1] https://newsroom.usaa360.com/news/usaa-to-return-usd-520-million-to-members  (*last accessed* February 29, 2024)
[2] *See* "CA COVID-19 Premium Refund Report Submissions - Company U to Z," California Department of Insurance, at "USAA - Group# 200 - Bulletin 2020-3 Resubmission," www.insurance.ca.gov/0250-insurers/0300-insurers/0100-applications/rsb-forms/2020/2020-3-submissions/loader.cfm?csModule=security/getfile&pageid=315821  (*last accessed* February 29, 2024).
[3] *See id.* at worksheet for United States Automobile Association – NAIC #25941, USAA Casualty Insurance Company – NAIC #25968, USAA General Indemnity Company – NAIC #18600, and Garrison Property and Casualty Insurance – NAIC #21253

use and traffic, the credit given by Defendants is wholly inadequate to compensate Plaintiff for his overpayments on these policies.

# FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**A.  The Global COVID-19 Pandemic and State-Mandated Social Distancing Measures**

14.  In late December 2019, a novel coronavirus known as SARS-CoV-2 began to spread around the globe. The virus causes a disease called COVID-19. By mid-January, cases of COVID-19 were confirmed in the United States.

15.  By mid-March 2020, there were thousands of confirmed cases of COVID-19 across the United States and hundreds in the State of California alone.

16.  Like many states around the country, California responded to the worsening COVID-19 crisis with measures designed to increase, and often mandate, social distancing in order to slow the spread of the virus.

17.  On March 4, 2020, Governor Gavin Newsom proclaimed a State of Emergency in California as a result of COVID-19. Subsequently, California rolled out a series of social distancing measures, including, for example, recommendations that older adults and those with elevated risk should self-isolate.

18.  On March 19, 2020, Governor Newsom enacted a statewide stay-at-home order,[4] which generally mandated "all individuals living in the State of California to stay home."[5]

**B.  Defendants Obtained a Windfall Due to the Dramatic Decrease in Automobile Use and Traffic Caused by COVID-19**

---

[4] Executive Order N-33-20 (Mar. 19, 2020), https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf (*last accessed* February 29, 2024)

[5] *Id.* ¶ 1.

19. Although many businesses across the United States suffered as a result of COVID-19, state-wide stay-at-home orders, and other social distancing measures, the auto insurance industry dramatically benefited during the early stages of the pandemic. In fact, auto insurance—a $250 billion industry— secured a windfall from COVID-19-related restrictions. The reason is simple. As one report put it: "With shelter-in-place restrictions and business closings, most people stopped driving or reduced their driving dramatically. With fewer cars on the road, there were dramatically fewer accidents. Fewer motor vehicle accidents mean fewer auto insurance claims."[6]

20. Beginning in mid-March of 2020, the number of miles driven by individuals dropped dramatically because of COVID-19. This includes the State of California. Through the use of cell phone location data, it has been reported that vehicle miles traveled in California dropped significantly from their January 2020 average in March and April of 2020:[7]

| Date Range | Decrease in Miles Traveled |
| --- | --- |
| March 15 - March 21 | -53% |
| March 22 - March 28 | -72% |
| March 29 - April 4 | -74% |
| April 5 - April 11 | -77% |
| April 12 - April 18 | -74% |
| April 19 - April 25 | -71% |

---

[6] *See* Center for Economic Justice & Consumer Federation of America, Personal Auto Insurance Premium Relief in the COVID-19 Era at 5 (May 7, 2020) ("CEJ/CFA Report"), https://consumerfed.org/wp-content/uploads/2020/05/Auto-Insurance-Refunds-COVID-19-Update-Report-5-7-20.pdf (*last accessed* February 29, 2024)
[7] *See id.* at 6-8.

Upon information and belief, decreases in pre-COVID miles traveled continued through the end of 2020 and well into 2021.[8]

21. Automobile accidents also decreased. According to the Road Ecology Center at the University of California, Davis, traffic collisions, including those involving injuries or fatalities, dropped by roughly half after California instituted its stay-at-home order.[9]

22. This dramatic decrease in driving and auto accidents throughout most of 2020 and well into 2021 allowed auto insurance companies, including Defendants, to unfairly profit at the expense of their policyholders during the COVID-19 pandemic. Auto insurance rates, including those set by Defendants, are intended to cover the claims and expenses that they expect to occur in the future, extrapolated from historical data. Thus, as explained in the joint report issued in 2020 by the Center for Economic Justice and the Consumer Federation of America:

> Because of COVID-19 restrictions, the assumptions about future claims underlying insurers' rates in effect on March 1 became radically incorrect overnight. When roads emptied, the frequency of motor vehicle accidents and insurance claims dropped dramatically and immediately. The assumptions in insurers' rates covering time-frames from mid-March forward about future frequency of claims became significantly wrong when the roads emptied because of Stay-At-Home orders and business closures starting in mid-March. The then-current rates became excessive not just for new policyholders

---

[8] *See id.* at 2; *see also* Center for Economic Justice & Consumer Federation of America, Auto Insurance Refunds Needed as New Data Show Crashes Remain Well Below Normal Due to Pandemic (Dec. 22, 2020), https://consumerfed.org/press_release/auto-insurance-refunds-needed-as-new-data-show-crashes-remain-well-below-normal-due-to-pandemic-23-fewer-accidents-in-september-and-october/ (*last accessed* February 29, 2024)

[9] Fraser Shilling and David Waetjen, *Special Report: Impact of COVID19 Mitigation on Numbers and Costs of California Traffic Crashes*, Road Ecology Center, UC Davis, Apr. 1, 2020 (updated Apr. 15, 2020), https://roadecology.ucdavis.edu/sites/g/files/dgvnsk8611/files/files/COVID_CHIPs_Impacts_report2.pdf (*last accessed* February 29, 2024)

going forward, but also for existing policyholders whose premium was based on now-overstated expectation about insurance claims.[10]

23.     The excessive premiums collected and not refunded by Defendants during the COVID-19 pandemic have led to a substantial windfall.

**C.     Defendants Have Failed to Give Adequate Refunds to Plaintiff and Other Policyholders in California**

24.     According to conservative calculations by the Center for Economic Justice and the Consumer Federation of America based on motor vehicle accident data, at least a 30% minimum average premium refund to consumers would be required to correct the unfair windfall to auto insurance companies, including Defendants, just for the time period from mid-March through the end of April 2020.[11]

25.     At all relevant times, Defendants have been aware of the need to refund premiums in order to correct the unfair windfall it gained from policyholders in California as a result of the COVID-19 crisis. Defendants have likewise been aware of its excessive profits. Despite this, Defendants have failed to adequately return these profits to its customers.

26.     In spring 2020, Defendants announced its plans to issue dividends to its auto insurance policyholders. Under the program, Defendants provided a dividend representing approximately a 20% premium credit to personal auto insurance customers for three months' worth of premiums.[12]

---

[10] CEJ/CFA Report, *supra*, at 4.
[11] CEJ/CFA Report, *supra*, at 12-13.
[12] Defendants' pandemic-related dividend was extended because, per an August 2020, statement attributed to USAA President and CEO Wayne Peacock on USAA's website, "We see that members are driving less than when the pandemic hit. As these patterns unfold, we are adjusting our auto insurance rates." *See* "USAA to Return an Additional $270 Million to Members, Totaling Over $1 Billion in Dividends," (August 2020), https://www.commemorativeairforce.org/news/usaa-to-return-an-additional-270-million-to-members-totaling-over-1-billion-in-dividends  (*last accessed* February 29, 2024).

27. Following the issuance of its dividends, Defendants subsequently issued premium credits in the amount of 20% of one month's premium for policyholders who were issued a policy in April or May 2020. Defendants also issued a second premium credit amounting to 10% of one month's premium for policyholders who had a policy in effect in August of 2020. The company reports that it subsequently provided additional, but even smaller refunds to California customers in 2020 and 2021 ranging between 5% and 3% of monthly premiums.

28. But Defendants' dividend and premium credit program has been inadequate to compensate its customers for the unfair windfall that the company has obtained as a result of COVID-19. The credits were nowhere near the minimum 30% average refund benchmark that has been conservatively estimated as an adequate refund for just the first the first two months of the pandemic alone.

29. Plaintiff Olguin-Moreno has been a policyholder with Defendants at all relevant times. Plaintiff is a current USAA policyholder.

30. Under Defendants' publicly announced dividends and premium credits issued, Plaintiff received dividends and/or premium credits in 2020 and 2021. These dividends and premium credits were inadequate to compensate Plaintiff for the unfair windfall that the company has obtained as a result of COVID-19.

31. Under its insurance policies, including the policies of Plaintiff and the members of the putative class, Defendants have the discretion to make voluntary downward premium adjustments based on an insured's changed circumstances.

32. Defendants improperly exercised that discretion by failing to issue refunds of the now-excessive premiums during changed circumstances, when it should have instead used its discretion, in good faith, to make appropriate adjustments.

33. Plaintiff's policies described above were in effect during the time period in which most of the United States, including California, was significantly impacted by the global COVID-19 pandemic and stay-at-home orders (along with other measures and conditions) caused a widespread and dramatic decrease in automobile use and traffic. Despite this, Defendants gave Plaintiff inadequate dividends and premium credits on their 2020 and 2021 premiums.

34. Defendants were aware that the shelter-in-place orders, social distancing guidelines, and resulting reduction in driving resulted in premiums that were not based on an accurate assessment of risk. Yet Defendants continued to collect and retain excessive, unfair premiums from Plaintiff and others.

35. In 1988, California voters approved Proposition 103 to further establish the public policy of the state and to "protect consumers from arbitrary insurance . . . practices, to encourage a competitive insurance marketplace . . . and to ensure that insurance is fair, available, and affordable to all Californians." The people of the state declared with Proposition 103 that "[t]his law shall be liberally construed and applied in order to fully promote its underlying purposes . . . ."

36. Defendants' collection and/or retention of such excessive premiums violates California public policy limiting insurers such as Defendants to a fair rate of return and contravenes Proposition 103's mandate to protect consumers from arbitrary insurance practices, to encourage a competitive insurance marketplace, and to ensure that insurance is fair, available, and affordable for all Californians.

37. Upon information and belief, thousands of other policyholders in California have been injured by Defendants' policy and practice of failing to provide adequate refunds to policyholders due to the COVID-19 pandemic.

38. Plaintiff and the members of the putative class were unable to reasonably avoid these harms because the analysis required to determine premium refunds was within the exclusive knowledge of Defendants.

# CLASS ACTION ALLEGATIONS

39. Pursuant to Fed. R. Civ. P. 23(a) and 23(b), Plaintiff brings this action individually and on behalf of all similarly situated individuals.

40. The proposed class is defined as follows:

All California residents who purchased personal automobile insurance from Defendants covering any portion of the time period from March 1, 2020 to June 11, 2021.

41. The members of the class are so numerous that joinder of all members is impracticable. While the precise number of class members has not been determined at this time, upon information and belief, there are thousands of individuals in the class. The identities of the class members can be determined from Defendants' records.

42. Plaintiff reserves the right to modify the proposed class definition upon investigation and discovery as part of a prospective motion for class certification.

43. There are questions of law and fact common to the class that predominate over questions solely affecting individual members.

44. The common questions of law and fact include, but are not limited to:

    a. Whether Defendants have a common policy or practice of failing to provide adequate refunds to policyholders due to the COVID-19 pandemic;

    b. Whether Defendants' refund program is inadequate;

    c. Whether Defendants violated the covenant of good faith and fair dealing;

    d. Whether Defendants' failure to provide adequate refunds to its customers is unfair;

    e. Whether Defendants have violated California consumer protection laws through its failure to provide adequate refunds to

its customers and its failure to disclose the inadequacy of its refunds; and

 f. the proper measure and calculation of damages.

45. The questions of law and fact listed above will yield common answers for Plaintiff and the class as to whether Defendants are liable for the alleged legal violations.

46. Plaintiff's claims are typical of those of the members of the class. Plaintiff, like other class members, was subject to the unlawful practices described herein.

47. Plaintiff will fairly and adequately protect the interests of the class and has retained counsel experienced in complex class action litigation.

48. This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members. A class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy because, in the context of similar litigation, individual Plaintiff often lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to Defendants' policies and practices. There will be no difficulties in managing this action.

49. In the alternative, class treatment is appropriate under Fed. R. Civ. P. 23(c)(4) because this is a case in which class adjudication of particular issues would serve the interests of judicial economy.

## CAUSES OF ACTION

## COUNT I
**Breach of Contract –
Violation of the Covenant of Good Faith and Fair Dealing
(On Behalf of Plaintiff and the Putative Class)**

50. Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

51. Plaintiff and the members of the putative class purchased insurance contracts from Defendants and performed their contractual obligations thereunder.

52. Defendants owed Plaintiff and the members of the putative class a duty of good faith and fair dealing by virtue of their contractual relationship.

53. Under the insurance contracts, Defendants had the discretion to make voluntary downward premium adjustments based on an insured's changed circumstances

54. Plaintiff and the members of the putative class had a reasonable expectation that Defendants would exercise this discretion fairly and in good faith, without depriving Plaintiff and the members of the putative class of their right to have the premiums collected for their insurance coverage limited to no more than a fair rate of return, and to have that rate adjusted if it became excessive.

55. Defendants' failure to return sufficient premiums has disappointed the legitimate expectations of Plaintiff and the members of the putative class of having premiums collected for their insurance coverage that are limited to no more than a fair rate of return, and to have that rate adjusted if it became excessive.

56. Defendants' conduct has thereby deprived Plaintiff and the members of the putative class of one of the key benefits of their contracts, and constitutes a willful violation of the obligation of good faith and fair dealing owed for the purpose of unfairly maximizing revenue from premiums paid by Plaintiff and members of the putative class.

57. In addition, Defendants gave more weight to its own interests than to the interests of its policyholders. This conduct violated the higher standard of

good faith and fair dealing to which insurers are held due to the special relationship existing between insurer and insured, which is characterized by elements of public interest, adhesion, and fiduciary responsibility.

58. Defendants consciously and deliberately acted with a lack of good faith, despite knowing that its conduct violated the orders of the Department of Insurance, thereby disappointing the reasonable expectations of Plaintiff and the members of the putative class that premiums collected for their insurance coverage would be limited to no more than a fair rate of return, and would be adjusted if they became excessive.

59. Plaintiff and the members of the putative class have been injured as a direct and proximate result of Defendants' unlawful conduct.

## COUNT II
### Unjust Enrichment/Quasi-Contract
**(On Behalf of Plaintiff and the Putative Class)**

60. Plaintiff pleads this Count in the alternative to his other Counts herein.

61. As a result of Defendants' failure to provide adequate refunds to its policyholders as described herein, Defendants have been unjustly enriched.

62. Defendants were enriched under such circumstances that it cannot conscientiously retain its gain at Plaintiff's and the putative class's expense.

63. Plaintiff and the members of the putative class have been injured as a direct and proximate result of Defendants' unlawful conduct.

## COUNT III
### Violation the California Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code § 17200 *et seq.*
**(On Behalf of Plaintiff and the Putative Class)**

64. Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

65. Plaintiff and Defendants are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

66. The UCL defines unfair competition to include any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

67. By committing the acts and practices alleged herein, Defendants have engaged in unfair business acts and practices in violation of the UCL.

68. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims. Defendants have violated the UCL's proscription against unfair business practices by, among other things: failing to fully refund premiums with full knowledge of the amount and extent of their excess and the fact that they are not based on an accurate assessment of risk, and failing to disclose the fact that it is earning excessive profits, or the amount of those profits.

69. There is no societal benefit from Defendants' conduct—only harm to consumers. Defendants have engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers, and the gravity of its conduct outweighs any alleged benefits attributable to such conduct.

70. California has a longstanding public policy limiting an insurer's ability to impose rates in excess of a fair rate of return on the insured risk that is reflected in various statutes and regulations.

71. Defendants' conduct in collecting and retaining premiums that have become excessive in light of the unforeseen pandemic-related reduction in driving violates this vital public policy and the intent of the statutes and regulations designed to ensure that the rates collected by insurers relate to the risk insured and are limited to a fair rate of return.

72. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

73. The injury caused by Defendants' failure to provide adequate refunds is substantial in light of very conservative calculations that a 30% minimum average premium refund would be required to correct its unfair windfall just for the time period from mid-March through the end of April 2020.

74. Plaintiff and the members of the putative class have been injured as a direct and proximate result of Defendants' conduct in violation of the UCL. Plaintiff and the members of the putative class lost money or property and suffered injury in fact because Defendants collected and retained, and continues to collect and retain, premiums in excess of the limitations imposed by California public policy, which rightfully belong to Plaintiff and the putative class.

75. Plaintiff and the members of the putative class were unable to reasonably avoid these harms because the analysis required to determine premium refunds was within the exclusive knowledge of Defendants.

76. Plaintiff therefore request that this Court grant the relief enumerated below. Otherwise, Plaintiff and the members of the putative class may be irreparably harmed and/or denied an effective and complete remedy.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the putative class, prays for relief as follows:

A. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23;

B. The appointment of Plaintiff as class representative and his counsel as class counsel;

C. A declaration that the practices complained of herein are unlawful and violate the laws of California alleged herein;

D. Awarding Plaintiff and the members of the putative class their damages in an amount to be determined at trial, including compensatory damages, consequential damages, punitive damages, and any other damages provided under relevant laws;

E. Disgorgement of, restitution of, and/or imposing a constructive trust upon, the ill-gotten gains derived by Defendants from its unjust enrichment;

F. An order awarding Plaintiff and the class attorneys' fees, costs, and expert costs;

G. An order awarding Plaintiff and the members of the putative class pre-judgment and post-judgment interest, as allowed by law; and

H. Such further relief as may be appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 1, 2024            By:     *s/Manfred P. Muecke*

Manfred Muecke (SBN: 222893)
mmuecke@manfredapc.com
**MANFRED, APC**
600 West Broadway, Suite 700
San Diego, CA 92101
Telephone: (619) 550-4005
Facsimile: (619) 550-4006

Todd D. Carpenter (SBN: 234464)
tcarpenter@lcllp.com
**LYNCH CARPENTER LLP**
1234 Camino Del Mar
Del Mar, CA 92014
Telephone: (619) 762-1910
Fax: (724) 656-1556

Jae Kook Kim (SBN: 236805)
ekim@lcllp.com
**LYNCH CARPENTER LLP**
117 E Colorado Blvd, Ste 600
Pasadena, CA 91105-3712
Telephone: (626) 550-1250
Fax: (619) 756-6991

Attorneys for Plaintiff Hugo Olguin-Moreno, and the putative class.